**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Willie L. WADE, Defendant-Appellant.**

**No. 16792.**

United States Court of Appeals
Sixth Circuit.

Sept. 2, 1966.

Harold R. Ratcliff, Memphis, Tenn., for appellant.

'Odell Horton, Jr., Asst. U. S. Atty., Memphis, Tenn., Thomas L. Robinson, U. S. Atty., Memphis, Tenn., on brief, for appellee.

Before EDWARDS and CELEBREZZE, Circuit Judges, and GORDON,* District Judge.

GORDON, District Judge.

The appellant, Willie L. Wade, and one Frank Rebb were jointly indicted on three counts resulting from the theft and cashing of a certain U. S. Treasury check in the amount of $163.61, the first count of the indictment charging violation of 18 U.S.C. § 1702, obstruction of correspondence, and the second and third counts charging the forging of an endorsement upon, and the knowingly uttering and publishing of a forged U. S.

Treasury check, each in violation of 18 U.S.C. § 495.

Rebb subsequently entered a plea of guilty on all three counts and testified for the government. Appellant entered a plea of not guilty and went to trial; was convicted by the jury on count one, obstruction of correspondence, and was found not guilty as to counts two and three of the indictment.

Though there is substantial conflict as to the facts, they seem susceptible of expression as follows: Appellant and Rebb were friends and on the fateful day in question were journeying in appellant's automobile to the home of one Baxter Leach, who resided on North Seventh Street in Memphis, Tennessee, and who owed appellant a sum of money which appellant desired to collect. Rebb was along for the ride. After being successful in collecting his debt from Leach, appellant returned to his automobile where Rebb had been waiting and the two continued driving. Here enters the conflict of testimony.

Rebb stated that they continued driving together some miles until they turned around near a residential location on Caldwell Street, at which time he, Rebb, noticed a brown government envelope in a mailbox, commanded the appellant to stop the automobile, and that he, Rebb, left the car, went up to the mailbox and removed the envelope, which contained the U. S. Treasury check in question. Rebb stated that upon returning to the automobile, the appellant made some inquiry as to "what I was fooling with", to which Rebb answered "nothing", that appellant returned him to the place where he had initially picked him up for the drive, that is, the "lot" at the Panama Liquor Store at Mississippi and Walker Streets, that he there separated from the appellant and did not see him anymore until the middle of the afternoon of the same day, and that during this interim period he, Rebb, solely and alone forged the endorsement of the name of the law-

---

* James F. Gordon, Judge, United States District Court for the Western District of Kentucky, sitting by designation.

ful payee to the check. He further stated that his midafternoon meeting with the appellant occurred on the same "lot", when appellant Wade, again driving his automobile, accompanied by an unidentified male companion and one Vivian Johnson, appeared, at which time Vivian Johnson beckoned Rebb to the car and in appellant's presence made inquiry of him (Rebb) as to the check. Whether or not the actual word "check" was used on this occasion is not established with certainty and the document may have been denominated only as "that". In any event, Rebb testified that he, then and there, in appellant's presence, gave the check to Vivian Johnson, who from her past criminal record, seems to have been one expert in the business of the illicit cashing of stolen checks, and told her that he (Rebb) wanted $50 of the face value of the check, and that he did not care "what they did with the rest of it". The parties then parted; however, Rebb stated that late that evening he again saw Vivian Johnson and the appellant, together with a group of other individuals, identities unknown, sitting in a cafe on Mississippi Street drinking beer, that there was money on the table, that he walked to the table, counted the money, $40 in amount ($10 shy of his requested take), but that he put the $40 in his pocket and walked out, all without any comment on either his, appellant's or Vivian Johnson's part. Rebb maintained that appellant Wade knew nothing about and had nothing to do with the theft of the check or its forged endorsement.

The government introduced Vivian Johnson. She identified the check in question and stated that when she first saw it, appellant Wade had it in his possession and brought it to her home and asked if she could "handle it", and gave it to her; that Wade then took her and another man (not Rebb), who was unknown to her, in his automobile to the "lot" at the Panama Liquor Store; that she made an effort to cash the check but was unsuccessful and returned to the car, at which time Rebb was present and she discussed the check with Rebb. The

majority of her discussion with Rebb, however, was out of the presence of the appellant Wade, and thus was properly excluded by the trial court. She further stated that shortly thereafter appellant Wade returned her to her home but before doing so, requested that she get some identification in order to be able to cash the check and she told appellant that she would try, but that she did not see appellant anymore after being let out at her home. She denied in its entirety the evening occurrence in the beer tavern in the company of the appellant and Rebb.

The appellant Willie Wade's testimony is to the effect that after collecting his debt from Leach, he returned to the "lot" at the Panama Liquor Store, where Rebb went his own way. Appellant emphatically denied any knowledge of the occurrence on Caldwell Street whereat Rebb admitted theft of the check. Appellant said that at about 2:00 P.M. the same afternoon he did see Rebb again at the "lot" of the Panama Liquor Store and that Vivian Johnson was also there at the time, but that he had no conversation with Vivian Johnson and that he did not see her further for some days or weeks, other than once casually when she was on the other side of a street, and on a later date when she came to warn him that the police were seeking his whereabouts relative to the stolen treasury check. Appellant denied any conversation with Vivian Johnson in any respect on the day in question and stated that he did not know that Rebb had stolen any check, and further maintained he cashed no such check and had no knowledge as to its endorsement or negotiation, and never had same in his possession. So much for the general facts.

The pertinent portions of 18 U.S.C. § 1702 involved on this appeal are:

"Whoever takes any letter * * * which has been in any * * * authorized depository * * * before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence * * * or opens, secretes, embezzles, or destroys the same, shall be * * *."

It becomes immediately apparent as to this appeal that there is no direct proof of any "taking" of the mail in question by the appellant Wade. There is evidence, however, of appellant's presence at the time of "taking" and of his subsequent possession, both actual and constructive, of the contents of the stolen mail and of his efforts to convert the same.

■ Accordingly, we are compelled to first decide the question of whether, as a matter of law, evidence (though denied by appellant) of possession, and presence at the time of taking, coupled with all of the reasonable inferences to be drawn from the other evidence in the case, would authorize a jury to conclude that appellant Wade participated in the offense of taking with design to obstruct in violation of 18 U.S.C. § 1702. We hold the answer to be yes. Appellant's denial of taking and possession is by no means conclusively true.

■ Undoubtedly, the Congress in enacting 18 U.S.C. § 1702 and its predecessor statutes 18 U.S.C. § 317 (1940 Ed.) and R.S. § 3892, and its forerunner Section 22 of the Act of March 3, 1825, 4 Stat. 102, was properly intending to insure that correspondence between a sender and an addressee be unobstructed *until manually delivered to the addressee* and that any person, not authorized to do so, who in any manner interferred with or prevented such delivery, violated the statute which was designed to protect the mail from every kind of danger, theft, or taking. (Emphasis ours.) United States v. Maxwell, D.C., 137 F.Supp. 298; Maxwell v. United States, C.A.Mo. 1956, 235 F.2d 930, certiorari denied 352 U.S. 943, 77 S.Ct. 266, 1 L.Ed.2d 239.

In Doub v. United States (9th Cir.), 1965, 341 F.2d 572, certiorari denied 382 U.S. 851, 86 S.Ct. 98, the defendant, when arrested for another offense, was found in possession of three checks taken from the mail some three hours previously and maintained by him to have been found in a discarded wallet. Holding that possession of the checks *alone* was sufficient to present a jury question as to how such reached defendant's possession, and whether defendant's version as to such was true or not, the Court approved the following instruction by the trial judge:

"Possession of the letters and contents thereof shortly after they had been deposited in the United States mail, if not satisfactorily explained, is a circumstance from which the jury may reasonably draw the inference and find in the light of the surrounding circumstances that the person in possession *participated in some way* in obstructing the correspondence" (Emphasis ours),

and stated further, "It was a question of fact, and the appellant's explanation was by no means obviously true."

Also, in Perkins v. United States (9th Cir.) (1963), 316 F.2d 228, wherein appellant and another, in full view of government agents, approached a mailbox from which appellant's companion removed a letter and when the two were immediately thereafter arrested, neither was found in possession thereof, and there was no direct evidence that appellant was ever in possession of the stolen matter and appellant gave his explanation of the occurrence, the Court said:

"Perkins' explanation of what he was doing was one that the jury could have believed, but was not required to believe * * * We think that the evidence permits an inference that he was a participant and that, consequently, the verdict of the jury is supported by the evidence." Perkins v. United States (9th Cir.) (1963), 316 F.2d 228.

In the instant case both Rebb and Johnson place appellant Wade in possession of the stolen check, though under differing factual circumstances. There was evidence of appellant's presence at the time and place of the theft of the mail by Rebb. Further, there was proof offered by the government as to the possession by appellant Wade of another check [1] stolen from the mail, not involved

---

1. Identified as the Casem check.

in this indictment under which appellant Wade was being tried, but which evidence the trial court admitted, under proper instruction and admonition to the jury, as to its consideration only for the purpose of showing appellant Wade's intent. Also, there was government evidence offered, creating at least an inference, that perhaps appellant played some part in the actual cashing of the stolen check, though such was not found by the jury to be sufficient to warrant a conviction of appellant under count three for "uttering". Further, Vivian Johnson's admitted subsequent visit to warn appellant that the police were searching for him, in view of appellant's denial of all transactions and conversations with Vivian Johnson with respect to both the stolen U. S. Treasury check in question and the Casem check. It cannot be said by us, as a matter of law, that all of such was not sufficient inferential evidence to the jury to convince it to the effect that appellant Wade was a participant in the violation of count one of the indictment upon which the jury found him guilty.

It thus appears, to the satisfaction of this Court, that the evidence of possession, together with the reasonable inferences that might be drawn by the jury from all of the other evidence in the case, created a question of fact, from which the jury could have believed, beyond a reasonable doubt, that the appellant Wade participated in obstructing the correspondence, and accordingly same was properly submitted to the jury by the trial court; and all of the evidence, when taken in the light most favorable to the government (Kowalchuk v. United States (6th Cir.) (1949), 176 F.2d 873, 876), is, in our opinion, sufficient to sustain a verdict of guilt under count one of the indictment. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680, 704 (1942); United States v. Tremont, 351 F.2d 144 (6th Cir.) (1965).

We now turn our attention to appellant's other grounds for reversal, which were initially fifteen in number, several of which have been disposed of by our foregoing rulings.

■■ Appellant complains of prejudicial error on the part of the trial court, who, by questions of the government witness Rebb, after that witness had exonerated the appellant of any knowledge of the theft or forgery, injected into the evidence, for the first time, that Rebb had been convicted of a felony; following which the trial judge admonished the jury that such prior conviction might be considered by them only as affecting the credibility of the witness Rebb. Of course, a trial judge may ask questions and give comments upon the evidence, as he is not a mere moderator, but is in control of the trial to insure its proper conduct, so long as the comments and questions are fair and not designed to mislead, as expressed by Mr. Chief Justice Hughes in Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321. A reading of the transcript pertaining to this issue reflects that Rebb's prior conviction came to light during a colloquy between Rebb and the trial judge, a reading of which indicates it to have been undertaken by the Court in order to lay at rest, in his own mind, certain conversations that occurred at the Jailhouse between Rebb and other parties. Though Rebb had exonerated the appellant of theft, he, it must be remembered, had not exonerated appellant as to possession of the check and/or its resultant proceeds. Thus, the injection into evidence of the question of the credibility of the government witness Rebb was no more harmful to appellant than to the government's case, and at most would constitute only harmless error not affecting appellant's substantial rights, and is thus disregarded. See Rule 52(a), F.R.Crim.P.

■ Appellant alleges error by the trial court in admitting into evidence proof of the existence of the Casem check and the trial court's subsequent action in allowing the government to reopen its case in order to prove the Casem check was a stolen one. Evidence relating to the Casem check is certainly within the exception to the general rule as expressed

by this court in Grant v. United States, 255 F.2d 341 (6th Cir., 1958), for it is blended with and sheds light on the intent of the appellant in committing the act for which he was tried, and therefore becomes admissible. The transactions here were so connected with the offense charged that they serve to show a general pattern. Vivian Johnson testified that the stolen Treasury check in question and the Casem check were both delivered to her at the same time by the appellant Wade, and that she had been subsequently successful in cashing the Casem check and dividing the proceeds with the appellant. These evidentiary matters were closely related in time and transaction and the trial court properly instructed the jury as to their consideration of such evidence. Harper v. United States (1956), 99 U.S.App.D.C. 324, 239 F.2d 945; United States v. Welborn (4th Cir. 1963), 322 F.2d 910; Kowalchuk v. United States (6th Cir., 1949), 176 F.2d 873. Allowing the government to reopen, once it had rested, was, in our opinion, on the whole record, required in the interest of justice, for if the Casem check could not be established to, in fact, have been a stolen one, the appellant would have been prejudiced thereby for failure of the trial judge to admonish the jury to disregard all testimony relative thereto. This fact the trial court was required to ascertain. The conduct of a criminal trial is a matter within the discretion of the court. Ashbaugh v. United States, 13 F.2d 591, 593 (6th Cir., 1926); Parente v. United States, 249 F.2d 752, 754 (9th Cir., 1957); United States v. Pugliese, 153 F.2d 497, 500 (2nd Cir., 1945); and such discretion will not be disturbed in the absence of a clear showing of abuse. Johnson v. United States, 207 F.2d 314, 322 (5th Cir., 1953).

■■ Further, contention of error is asserted in that the trial court permitted cross examination of the appellant Wade concerning a prior felony. Once the appellant takes the stand to offer testimony in his own behalf, he may be cross examined as to prior convictions to affect his credibility as a witness. United States v. Yarbrough, 352 F.2d 491 (6th Cir., 1965), and cases therein cited under headnote (3).

We find no error in the court's instructions as to circumstantial evidence and as to accomplice, nor do we find error in the trial court's comment to the jury relative to its further deliberation of the case. United States v. George (United States v. Gulley), 319 F.2d 77, 80 (6th Cir., 1963), cert. denied, Gulley v. United States, 375 U.S. 942, 84 S.Ct. 349, 11 L.Ed.2d 273 (1964); United States v. Grimes (6th Cir., 1964), 332 F.2d 1014; United States v. Young (6th Cir., 1961), 291 F.2d 389.

■ Punishment fixed within the limits provided by the statute violated is a matter exclusively within the province of the trial court and, in this instance, did not exceed the period set by law, and in fact was fixed at only half of that authorized under the statute. Sullivan v. United States (5th Cir., 1963), 317 F.2d 101.

Finding no reversible error, the judgment of the district court is affirmed.