**UNITED STATES of America,**
**Plaintiff-Appellee,**
v.
**George Thomas NALLEY, Kenneth Royce**
**McGill, Defendants-Appellants.**

No. 71–1065.

United States Court of Appeals,
Sixth Circuit.

Feb. 3, 1972.

McCree, Circuit Judge, concurred in part and dissented in part, and filed opinion.

**260**

William T. Warner, Louisville, Ky. (Court appointed), and Michael O. McDonald, Louisville, Ky., (Court appointed), for defendants-appellants.

Kenneth J. Tuggle, First Asst. U. S. Atty., Louisville, Ky., for plaintiff-appellee; George J. Long, U. S. Atty., Louisville, Ky., on brief.

Before EDWARDS, CELEBREZZE and McCREE, Circuit Judges.

EDWARDS, Circuit Judge.

Appellants appeal from judgments of conviction after jury trial in the United States District Court for the Western District of Kentucky. The indictment had charged each appellant (and two other defendants) with possession of stolen goods which had been moving in interstate commerce, knowing same to have been stolen, in violation of 18 U.S.C. § 659 (1970). Appellants contend that there was insufficient evidence of guilt introduced at trial to support the jury's guilty verdict and that the District Judge committed reversible error in refusing to give a requested instruction, in giving the instruction he gave, and in failing to allow appellants' counsel to argue objections to his instructions before sending the jury out to begin its deliberations.

The background facts concerning this indictment were largely undisputed. A trailer loaded with 21 small garden tractors was shipped by truck from the International Harvester factory in Louisville, Kentucky, destined for consignees in New York state. On April 15, 1970, the truck driver who was to drive the trailer to New York parked the trailer overnight on a lot opposite his mother's house in Louisville, and it was stolen during that night. The following afternoon a farmer came upon the stolen trailer (with a stolen tractor attached) on an abandoned and heavily overgrown road (old 31–E) on his farm. He reported it to the sheriff, who contacted the FBI, and an investigation was made at the scene. The trailer was identified as the one previously reported as stolen; it had been opened; three of the 21 tractors were missing, and carton fragments and an assembly instruction sheet were found nearby. The law enforcement personnel concluded that the persons who had hidden the trailer there would be back. A surveillance was established.

Testimony established that on April 16, in the afternoon, appellant Nalley rented a large van, picked up appellant McGill and two other men, and the four men drove to new 31–E near the area where the stolen trailer was parked. On arriving at a point on new 31–E near to where the stolen trailer was concealed (on the stub end of old 31–E) Nalley and McGill left the van. At trial they both testified that they got out to go to "the restroom" and were never near the concealed truck and trailer.

An FBI agent circling the area in a Kentucky State Police plane, however, testified that he saw appellant Nalley and appellant McGill 15 to 20 yards behind the trailer. He continued to watch

them while they made their way through the woods to the new highway about 100 yards away. When appellants arrived there, the agent in the airplane saw a green and white van (which had previously been parked some distance down the road) approach and pick up appellants. The agent then radioed to law enforcement personnel on the ground to stop the van. The van was stopped and four men in it were arrested. The agent in the airplane watched the arrest and saw the two men whom he had previously seen near the truck get out of the van at the point of the arrest. A few minutes later he saw the same men in custody on the steps of the courthouse at Bardstown, Kentucky.

Testimony established that the 18 garden tractors remaining in the stolen trailer weighed approximately 750 pounds apiece.

Barker, one of the four original defendants, pled guilty to aiding and abetting after the fact. He testified for the government and detailed Nalley's role in organizing the four-man crew and renting the van to remove "machinery" at the location to which Nalley directed them.

"Q And what did Mr. Nalley do?

A Why, he left and, uh, two or three different times, but he was back around twelve noon, I think.

Q All right.

A And, uh, he left somewheres approximately around one o'clock, I think, saying he was going to get a truck.

Q Did he indicate to you what the purpose of that truck was?

A He said—told Scamahorne and I that he had a trailerload of something out in the country and he wanted us to help load it.

Q Did he tell you what the trailerload was?

A To the best of my knowledge it was some kind of machinery.

Q But you don't know any more about it than that?

A No, sir.

Q Did he tell you that it was a big trailer or a little trailer?

A He said a tractor and trailer.

Q Yes, sir; and who was present—he told you and Scamahorne both this?

A Yes, sir.

Q Do you remember about when; in the early morning or afternoon was that?

A This was sometime before noon.

Q Was that before he went to rent this truck?

Yes, sir.

Q Now, did he tell you where this tractor and trailerload of something was?

A He was telling Scamahorne about it because I remember that Scamahorne said he knew the exact place because he had lived there previously.

Q That's on the basis of Nalley's description?

A Yes.

Q And where did that conversation take place?

A In the living room.

Q Now, what time did Mr. Nalley come back with this truck?

A Somewhere around three o'clock.

Q And was there anybody else with him at that time?

A Yes, sir; McGill was with him at this time."

Barker also testified as to what happened at the scene when Nalley and McGill got out of the rented truck:

"Q Nalley; did he give Mr. Scamahorne any more explicit directions than that?

A Well, we went by this gravel road that led off to the right.

Q Un-huh.

A And I don't know how far we went by it—I guess two hundred yards or something, and, uh, he told Scamahorne to let him and McGill out and to come back in about ten minutes and if

they weren't standing on the side of the road to pull down that gravel road.

Q Yes, sir; what did you and Mr. Scamahorne do after Nalley and Mc-Gill got out?

A Well, we went on approximately a mile, I guess or a half-mile and Scamahorne said something about seeing some of his people, but we decided we wouldn't and we turned off on what is a "U" turn or something off of a gravel road.

Q All right.

A And we saw this plane circling and we were talking about, uh, reckon what the plane was looking for and so we came back and picked up Nalley and McGill on the side of the road."

■ As to appellant Nalley, there is obviously no merit to the substantiality of evidence issue. There was ample evidence to allow the jury to conclude that he was engaged in preparing to unload the stolen garden tractors and dispose of them, and that he recruited others to help in the plan.

■ The evidence pertaining to appellant McGill is somewhat less conclusive. But reading the transcript of the trial persuades us that the total circumstances provided a proper basis for the jury to draw an inference of guilt as to him also. The proofs concerning the theft of the trailer and the tractor which pulled it to the site of concealment on old highway 31–E are undisputed. So was the testimony that the trailer had been entered and three of its load of garden tractors had been removed. Under these circumstances McGill's presence in the immediate vicinity of the carefully concealed stolen vehicles, in company with the man whom he knew had rented a van and assembled a crew capable of completing the unloading of the trailer, could have been accepted by the jury as proof beyond reasonable doubt of constructive possession of the stolen goods. There is much more to this case than mere presence in the vicinity of illegal activity. *Cf.* United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965).

The District Judge charged the jury that defendants' possession of recently stolen goods allowed the jury to infer knowledge of the theft unless such possession was satisfactorily explained. The judge's charge was drawn from 1 Devitt & Blackmar, Fed.Jury Practice & Instructions § 13.11 (1970), and has been consistently upheld. United States v. Wolfenbarger, 426 F.2d 992 (6th Cir. 1970); United States v. Wade, 364 F.2d 931 (6th Cir. 1966). Appellants did testify and attempt such explanations. They denied ever being at the trailer. Their testimony was in square conflict with that of the airborn FBI agent and also with that of Barker, one of their companions in the rented van. Additionally, their stories had a quality of inherent improbability, all of which certainly allowed the jury to reject them.

The total circumstances of this case persuade us that there was adequate evidence to support the jury finding of guilt beyond reasonable doubt as to both appellants.

■ Two additional appellate issues bear mention. The District Judge also charged that recent possession of stolen goods allowed an inference of participation in the theft. This instruction is likewise a widely used form instruction, 1 Devitt & Blackmar, Fed.Jury Practice & Instructions § 13.12, and has in appropriate circumstances been upheld. United States v. Coppola, 424 F.2d 991 (2d Cir.), cert. denied, 399 U.S. 928, 90 S.Ct. 2246, 26 L.Ed.2d 795 (1970). While the evidence in this case as to appellants may have been sufficient to support this charge, neither defendant was charged with theft. The giving of this charge appears to us to be error. Under all the circumstances of this case, however, in view of the strength of the proofs and the fact that both appellants were charged with and convicted of possession only, we deem the giving of the second charge as to appellants to have been harmless error which did not affect the outcome of the trial.

■ We also note that the record discloses that the District Judge failed (as

required by Fed.R.Crim.P. 30) to give counsel time to record objections to the charge *before* the case was submitted for consideration by the jury. We, of course, disapprove the infraction of this rule, but we do not find prejudice resulting therefrom which requires reversal.

The judments of conviction are affirmed.

McCREE, Circuit Judge (concurring in part and dissenting in part).

I agree with the majority opinion that Nalley's conviction should be affirmed, but I respectfully dissent from that result in McGill's case.

As the Supreme Court stated in United States v. Romano, 382 U.S. 136, 141, 86 S.Ct. 279, 282, 15 L.Ed.2d 210 (1965), in which it held unconstitutional a statutory presumption that authorized a jury to infer from a defendant's presence at an illegal still site that he had possession of the still:

> [t]he United States has presented no cases in the courts which have sustained a conviction for possession based solely on the evidence of presence. All of the cases which deal with this issue and with which we are familiar have held presence alone, unilluminated by other facts, to be insufficient proof of possession . . . .

*See* Leary v. United States, 395 U.S. 6, 30–36, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

Nalley clearly knew where the stolen tractors were concealed. He rented a truck and organized a group of men to help him move them. But there is no evidence that McGill knew that he was employed to move stolen goods. In fact, the evidence suggests the contrary. Nalley's confessed accomplice testified as a government witness as follows:

> Q   When was the first time that you learned that the tractor and trailer had stolen tractors in it?
>
> A   Well, actually that, uh, the F.B.I. and State Police were telling us about it, you know, and after we got to the jail or the courthouse they were interviewing Scamahorne and Nalley in the back room and, uh, McGill said something to me like, that he—uh, that he wished somebody had told him that trailerload of tractors had been there and he would have stayed home in bed.

Under *Romano* and the cases in our circuit following it, I would hold impermissible the inference that McGill possessed the stolen tractors from the mere fact of his presence 15 to 20 yards away from the trailer upon which they were loaded. That fact, without more, does not create a greater likelihood of criminal conduct than of innocent behavior and does not permit conviction of the crime of possessing stolen property. United States v. Readus, 367 F.2d 689, 690 (6th Cir. 1966). *Compare* United States v. Warren, 428 F.2d 15, 17–18 (6th Cir. 1970), *with* United States v. Johnson, 434 F.2d 816, 818–819 (6th Cir. 1970), *and* United States v. Reeves, 377 F.2d 524, 525 (6th Cir. 1967).

The fact that the stolen vehicles were carefully concealed does not make McGill's presence more persuasive of his possession of them. In United States v. Romano, *supra*, the arrests were made at a still site concealed in an otherwise unused portion of a 42 acre industrial complex. Despite this circumstance, the Court of Appeals stated:

> "The inference here is too strained and is not reasonably related to the fact proved. For example, one found present at a still may as well be a purchaser of the distilled product or a visitor for some other business purpose." United States v. Romano, 330 F.2d 566, 570 (2d Cir.), aff'd, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965).

The fact that McGill was in the company of other persons who were proven guilty is also an insufficient basis for inferring that he possessed the tractors. As we stated in United States v. Readus, 367 F.2d 689, 690 (1966):

> . . . mere presence on the scene and association with illegal posses-

sors [are] not enough to support convictions for possession or transportation.

It does not matter whether McGill's attempted explanation of his presence was believable since the Government failed to establish a prima facie case of his guilt.

Since I would find the evidence insufficient to support the verdict of guilty in McGill's case, I find it unnecessary to discuss the issues relating to the erroneous jury charge and the judge's failure to comply with Fed.R.Crim.P. 30 which the majority opinion finds harmless.