**UNITED STATES of America ex rel. Ophem FALCONER, Petitioner,**

**v.**

**Frank J. PATE, Warden, Illinois State Penitentiary, Respondent.**

**No. 70 C 1801.**

United States District Court,
N. D. Illinois, E. D.

Nov. 13, 1970.

Ophem Falconer, pro se.

William J. Scott, Atty. Gen. of Ill., Warren K. Smoot, Melbourne A. Noel, Jr., Asst. Attys. Gen., Criminal Justice Div., for the State.

## MEMORANDUM OPINION

WILL, District Judge.

Petitioner is presently incarcerated in the Illinois State Penitentiary, Joliet, Illinois, serving a term of 75 to 100 years for the offense of murder. He and his co-defendant, Ronald Doss, were tried and convicted by a jury in the Circuit Court of the Seventeenth Judicial Circuit, County of Winnebago, on July 17–20, 1967. The Illinois Supreme Court, although vacating the death sentence originally imposed by the jury, affirmed the convictions over the constitutional objections raised by petitioner and his

co-defendant concerning an alleged denial to them of their Fourth and Fifth Amendment rights. Ill.Sup.Ct., No. 41165, May, 1969. Petitioner is presently seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 claiming that 1) he had no counsel during interrogation immediately after arrest nor was he warned of his rights to have such assistance, in violation of the requirements of Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966); 2) the police violated his and Doss' Fifth Amendment rights by arranging a confrontation between the two, wherein petitioner told Doss to show the police where the gun allegedly used in the crime was hidden, which gun was subsequently admitted into evidence at their trial; and 3) petitioner and Doss were unconstitutionally arrested and searched without a warrant either for the arrest or the search and evidence obtained from this search was used at trial.

## I.

With respect to petitioner's allegation that he was not properly advised of his rights as required by *Miranda*, the State contends that he was in fact given such warnings but that, even if they had not been given, the conviction would not be vitiated because neither his confession nor evidence derived therefrom was introduced by the prosecution at the trial. Included as part of the voluminous record is a waiver form signed by the petitioner (R. 85–A) stating that he had been advised that he need not say anything to any law enforcement officers, that he was aware that any answers given could be used in evidence against him, that he understood that he had a right to have a lawyer present before and during any questioning by law enforcement officers, that he knew that, if he could not afford a lawyer, one would be appointed for him, and that he understood these rights and nevertheless wished to make a statement to the law enforcement officers. This form was witnessed by two Deputy Sheriffs of Winnebago County and dated April 4, 1967, 8:30 A.M.

Section 2254(d) of Title 28 of the United States Code requires a federal court in a habeas corpus proceeding by a person in state custody to presume as true any finding of fact made on the merits by a state court in any proceedings between the petitioner and the state unless the federal court concludes on a consideration of the record of the state court proceedings that such factual determination is not fairly supported by the record. Subsection (d) of 28 U.S.C. § 2254, which was added to that section by Congress in 1966, is a codification of the rule announced by the United States Supreme Court in Townsend v. Sain, 372 U.S. 293, 318, 83 S.Ct. 745, 760, 9 L.Ed. 2d 770 (1963), that where the state court has made a full and fair evidentiary hearing with express findings of fact, the district court may "and ordinarily should, accept the facts as found in the hearing." The conflicts and inconsistencies in testimony with respect to the details of what occurred between various persons presents issues of credibility and determination of the weight of the evidence for the trial judge who saw and heard those witnesses to resolve. United States ex rel. Robinson v. Pate, 312 F.2d 161 (7 Cir. 1963).

In the instant case, the factual issues of whether the *Miranda* warnings were properly given to petitioner and whether the waiver signed by petitioner was a voluntary and knowing waiver of his right to counsel and his right to remain silent were resolved by the Circuit Court in a pretrial hearing on July 6, 1967 (R. 78–122). The record of that hearing indicates that the only witness proffered by either the State or the defendants was one of the two police officers who spoke with petitioner subsequent to his arrival at the police station. This officer testified that he read the full "Miranda warning" to petitioner as embodied in a special card provided to policemen in Winnebago County for that purpose, which card was introduced into evidence. He further stated that peti-

tioner was asked to sign the waiver form after the warnings were given, that petitioner in fact appeared to read the waiver form, that petitioner stated that he was capable of reading and writing and that he understood the form, and that petitioner then signed the form in the presence of the officer; the time of these occurrences was estimated to be at 8:30 A.M. on the 4th of April, 1967. Cross-examination of this witness brought forth the implication that perhaps the petitioner might not fully have understood that he was waiving these rights because he never specifically stated that he did not desire a lawyer to be present or that he needed a lawyer appointed; rather, petitioner merely stated that he was then willing to talk.

■ On the basis of this evidence, the trial court concluded (R. 119–122) that petitioner in fact was advised of his rights at the 8:30 A.M. meeting and that he understandingly, knowingly, and intelligently waived his rights and decided to volunteer statements concerning the alleged crime to the police officers. Although *Miranda* places a heavy burden on the State to prove that a waiver of the privilege of self-incrimination was knowingly and intelligently made when an interrogation continues without the presence of an attorney, this Court concludes that the record of the Circuit Court hearing adequately satisfies the strong burden placed on the State and supports the trial court's resolution of the factual dispute concerning whether petitioner was given the *Miranda* warnings and whether he knowingly and intelligently waived them. Therefore, this Court must accept that resolution and deny petitioner's request for relief on this claim.

## II.

Petitioner next contends that certain evidence, the gun used in the murder, was acquired through a violation of Doss' Fifth Amendment rights and that it consequently should not have been admitted into evidence at trial. The facts relevant to this claimed deprivation of constitutional rights, viewed most favorably to petitioner, are as follows. After arriving at the police station on the morning of April 4, 1967, Doss, separated from petitioner, was advised of his *Miranda* rights and he thereupon refused to make any statement to police; the police, nevertheless, persisted in attempting to garner information from Doss and arranged a confrontation between him and the petitioner. At about 9:30 A.M., Doss was brought to a room in which petitioner and numerous police officers were present. Petitioner told Doss that he desired to clear up the whole affair and requested Doss to show the police officers where he had buried the gun. Doss thereupon led the officers to the hidden gun, which was used in evidence at the trial of both co-defendants. It is this forced confrontation between Doss and petitioner which led to the discovery of the murder weapon that petitioner claims was violative of the Fifth Amendment and *Miranda*.

■ Petitioner apparently does not claim that his request to Doss to locate the murder weapon was violative of *Miranda*. If he does, that issue has been resolved against him above. Petitioner was given the *Miranda* warnings at approximately 8:30 A.M. and his request to Doss was made less than an hour later. While a valid waiver of the rights of an accused under *Miranda* obviously will not last forever, statements within an hour after a valid waiver has been given, barring exceptional circumstances, must be presumed to have been given voluntarily and knowingly.

■ Petitioner does contend that Doss' Fifth Amendment rights were prejudiced by this confrontation and that evidence resulting from this constitutional deprivation was used in the trial against both Doss and petitioner, thus violating *Miranda*. The State contends that the forced confrontation between the co-defendants was not violative of *Miranda*, and that, even if it were, petitioner has no standing to raise

this claim. We will assume, for purposes of this decision only, that the confrontation did in fact deprive Doss of his right under *Miranda* to be free from further interrogation after stating his desire to remain silent.

The United States Court of Appeals for the Eighth Circuit has recently considered the exact question of whether evidence tainted by a violation of the Fifth Amendment rights of a participant in a crime could be objected to by a co-defendant. In United States v. Bruton, 416 F.2d 310 (8 Cir. 1969), cert. denied, 397 U.S. 1014, 90 S.Ct. 1248, 25 L. Ed.2d 428 (1970), the court concluded that the defendant therein did not have standing to challenge a constitutional deprivation to his co-participant, notwithstanding that such evidence implicated the defendant. The court there analogized from the Supreme Court's holding in Alderman v. United States, 394 U.S. 165, 171, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1969), where the Court reaffirmed the principle that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. The *Bruton* court noted that the aspect of *Alderman* dealing with standing was at least in part an outgrowth of the personal nature of certain constitutional rights, there the Fourth Amendment's guarantee against unreasonable searches and seizures. As the Fifth Amendment right to be free from self-incrimination is likewise a personal right, Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951); Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906), the *Bruton* court decided that the defendant had no standing to attack the evidence poisoned by the constitutional deprivation of another, irrespective of the fact that such evidence seriously implicated the defendant.

We agree with the rationale of the *Bruton* court. The personal nature of the Fifth Amendment guarantee manifestly precludes petitioner from claiming any error because of Doss' alleged deprivation. The only potential prejudice arising from the introduction into evidence of the murder weapon, the fruit of the confrontation, would have accrued solely to Doss. Fifth Amendment rights of co-conspirators are strictly personal to them and one has a vested interest only in his own Fifth Amendment rights. Poole v. United States, 329 F.2d 720 (9 Cir. 1964). *Accord,* Bowman v. United States, 350 F.2d 913 (9 Cir. 1965), cert. denied, 383 U.S. 950, 86 S.Ct. 1209, 16 L.Ed.2d 212 (1965); Long v. United States, 124 U.S.App.D.C. 14, 360 F.2d 829 (1966); People v. Varnum, 66 Cal.2d 808, 59 Cal.Rptr. 108, 427 P.2d 772 (1967), cert. denied, 390 U.S. 529, 88 S.Ct. 1208, 20 L.Ed.2d 86 (1968).

Petitioner's heavy reliance on Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), is misplaced. He contends that the Supreme Court in that case excluded certain narcotics from evidence which was discovered as a result of unconstitutional acts by the police. This assertion is correct insofar as the Court did hold narcotics discovered as a result of an unconstitutional arrest of one Toy to be inadmissible as to Toy. That case, however, specifically held the identical evidence to be admissible as to Toy's co-defendant, because the seizure of the heroin, unconstitutionally seized as to Toy, "invaded no right of privacy of person or premises which would entitle Wong Sun to object to its use at his trial." 371 U.S. at 492, 83 S.Ct. at 419. *Wong Sun,* thus, is factually similar to the present case, except for the fact that the alleged constitutional deprivation to the co-defendant involved a Fourth Amendment rather than a Fifth Amendment right, and it in no way aids petitioner's claim for relief.

We conclude that the confrontation between Doss and petitioner, even if assumed violative of *Miranda*, raises no constitutional deprivation to petitioner; any such deprivation that may have oc-

curred was personal to Doss and may not be complained of by petitioner. Because petitioner has no standing to claim any violation of Doss' Fifth Amendment rights and because he cannot contend that his own request that Doss locate the buried weapon was given under an involuntary waiver of his *Miranda* rights, petitioner's claim for habeas corpus relief based upon the admission into evidence of the murder weapon must be denied.

### III.

Petitioner's final alleged constitutional deprivation concerns his warrantless arrest and the search of the motel room in which he was sleeping at the time of arrest, which search yielded a revolver and $753 in currency. Petitioner contends that, since the police knew the suspects were in the motel room and had the only avenue of escape barred, there was no danger of evidence being destroyed or removed and they were afforded adequate time to obtain an arrest and/or search warrant. The State argues that the sheriff's police who arrested petitioner and Doss at the motel on the morning of April 4, 1967, had probable cause for the warrantless arrest and that the search of the room, which was incident to the lawful arrest, was within the bounds prescribed by the United States Supreme Court.

An arrest is not invalidated merely because of the absence of a warrant to support it. A warrantless arrest by police does not conflict with the Fourth Amendment's prohibition against unreasonable searches and seizures so long as the arresting officers have probable cause to believe that the person or persons arrested have committed an offense. The test to be applied to determine if a warrantless arrest is constitutionally valid is whether, at the moment the arrest was made, the officers had probable cause to do so—"whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

The facts surrounding the arrest of petitioner and Doss in their motel room were developed in a pretrial hearing on June 29, 1967 (R. 18–78). The Winnebago County sheriff's police received information concerning the crime and a request for investigatory aid from the police in South Beloit, Illinois, the area in which the robbery-murder had occurred. The police had been provided with eyewitness descriptions of the robbers' race, approximate age, height and weight. They were further provided with a complete clothing description, which as to one of the two men was fairly atypical. In addition, the South Beloit police relayed information obtained from two acquaintances of petitioner that the two acquaintances had driven the petitioner and another man from South Beloit to the west side of Rockford, that during the drive the two men had admitted to the acquaintances robbing a grocery store and shooting its owner, and that the suspects were without an automobile.

Based on this information, the sheriff's police began combing the motels and hotels on the west side of Rockford asking after men who met the specific physical and dress description supplied from the eyewitness accounts, who had registered after midnight of the preceding day, and who were without an automobile. At the Inn Towne Motel, the sheriff's police asked the manager if she had rented any rooms after midnight and discovered that she had rented a room at 1:30 A.M. to two men of the same race and physical characteristics as petitioner and Doss, who were dressed almost identically to the description that the police had received, and who were without an automobile. In addition, the

surname used by one of the suspects in registering was identical to one given to the South Beloit police by the two acquaintances of the suspects. Based on this evidence, the police believed that the two men in the motel room were the suspects they were seeking and entered the room with a passkey to make the arrests.

"When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would warrant a man of reasonable caution in the belief that an offense has been committed." Beck v. Ohio, *supra*. If probable cause for the warrantless arrest exists, absence of the warrant, even though there may have been sufficient time to obtain one, does not invalidate the arrest. Odom v. United States, 403 F.2d 45 (5 Cir. 1968). Based on the information that led the police officers to make the arrest, this Court concludes that the police had a fully adequate and reasonable basis to conclude that the occupants of the motel room were the perpetrators of the robbery-murder. Although good faith alone on the part of the arresting officers is not enough to authorize an arrest without a warrant, a quantum of evidence that establishes guilt beyond a reasonable doubt is also not necessary to validate such an arrest. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). Taking into account the information acquired by the police that the suspects were probably in the general area of the motel and that two men matching the descriptions of eyewitnesses to the crime were in the particular motel room and had registered there at a time indicating their immediately prior arrival, the actions of the police in making the warrantless arrest fully met the reasonably prudent man standard set by the Supreme Court. We hold, therefore, that the arrest, although without a warrant, was based on probable cause and valid.

Once the sheriff's police were within the motel room, they proceeded to conduct a complete search of the room and bathroom. When they entered the room, both suspects were asleep, unclothed except for their undershorts. The suspects were awakened by police, pulled out of bed, and put against the wall; they were personally searched for weapons and money. The defendants had put their clothes on the floor next to and under their respective beds. Officers first searched these items of clothing which they recognized from the victims' descriptions, and found a .38 revolver and approximately $750 in cash. No other incriminating evidence was found in either room. After the search, petitioner and Doss were ordered to dress and were taken to sheriff's headquarters. The money and revolver were introduced at trial.

The State contends that this warrantless search incident to a valid arrest did not exceed the strict limits set by the United States Supreme Court in Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and that in any event, *Chimel* should not be applied retroactively because of its significant break with the past rules on search and seizure. In *Chimel,* the Supreme Court limited the permissible scope of a warrantless search incident to a lawful arrest to the arrestee's person and the area within his immediate control, the area in which he might gain possession of a weapon or destructible evidence. 395 U.S. at 763, 89 S.Ct. 2034.

Assuming, arguendo, that *Chimel* applies to the instant case, the search of the bathroom and the rest of the motel room conceivably could be beyond the scope of a valid warrantless search notwithstanding the State's contention that the room was "small."

However, the search of the suspects' clothing which produced the gun and money prior to their being ordered to dress must be deemed to conform to even the strict *Chimel* limitations. *Chimel's* rationale for allowing the police to constitutionally search the arrestee's person and the area in his immediate control without a warrant is to limit the latter's access to any weapons that might be used in an attempt to resist arrest, effect an escape, or otherwise harm the police and to ensure that the arrestee is not presented with an opportunity to damage or destroy any evidence.

This rationale compels the conclusion that the police may constitutionally conduct a warrantless search of any item that necessarily must be placed on the arrestee's person or within his immediate control in order to remove him from the place of arrest and take him into custody, notwithstanding that such item at the initial time of arrest may have been beyond the permissible search area under *Chimel*. To rule otherwise would create the very potential for harm to the arresting officers or the mutilation of evidence which *Chimel* so carefully sought to avoid. Such a contrary holding would be a dangerous and unwarranted extension of *Chimel* which would destroy the delicate balance sought in that case for accommodating the often opposing interests of effective law enforcement and protection to law abiding citizens against being at the mercy of a police officer's whim or caprice. As it was incumbent upon the police to have petitioner and Doss attire themselves prior to removing them to the sheriff's headquarters, the warrantless search of these garments and the subsequent introduction at trial of the gun and money revealed by that search did not impinge upon petitioner's Fourth Amendment rights. Therefore, petitioner's claim for relief on this basis must be denied.

Because petitioner has presented no valid grounds for relief, his petition for a writ of habeas corpus must be denied. An appropriate order will enter.