**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James Edward PIGG, Defendant-**
**Appellant.**

**No. 18353.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 4, 1972.

Decided Jan. 3, 1973.

Rehearing Denied Jan. 29, 1973.

Lorraine Woods, Civic Federation, Chicago, Ill., for defendant-appellant.

Henry A. Schwarz, U. S. Atty., E. St. Louis, Ill., Jonathan J. Seagle, Asst. U. S. Atty., Danville, Ill., and Michael L. Levinson, Asst. U. S. Atty., for plaintiff-appellee.

Before CASTLE, Senior Circuit Judge, and FAIRCHILD and CUMMINGS, Circuit Judges.

CASTLE, Senior Circuit Judge.

James E. Pigg was convicted of causing the interstate transportation of a forged check in violation of 18 U.S.C. § 2314 and was sentenced to three years imprisonment. On this appeal, he raises the following arguments: 1) his conviction should be reversed because the death of the court reporter immediately after his trial prevented the compilation of an adequate transcript to allow meaningful appellate review of the proceedings in the district court, 2) the out-of-court identification of him made by a bank teller was so impermissibly suggestive as to taint his conviction, and 3) the evidence presented at his trial was insufficient to prove his guilt beyond a reasonable doubt.

On January 17, 1969 a man identifying himself as Jack Dorfman opened an account in the City National Bank of Hoopeston, Illinois. He appeared again on January 20th and submitted a deposit slip and a check in the amount of $8500 for credit to his account. This check was payable to Jack Dorfman and was drawn on the account of one Leonard R. Hoying at the Winters National Bank and Trust Company in Dayton, Ohio. On January 24th the same person appeared with a check for $6800 which he exchanged for a cashier's check for $6300 and $500 in cash. The $6300 check was cashed at the Busey National Bank of Urbana, Illinois the same day

by a man identifying himself as Jack Dorfman.

The City National Bank sent the $8500 check through its banking channels for collection, and subsequently learned that the check had been dishonored by the Winters National Bank because Leonard Hoying had neither made nor authorized the making of the check.

James E. Pigg was arrested at his residence in Miamisburg, Ohio after the FBI had gained sufficient evidence to suspect that he was the person who had posed as Jack Dorfman. At his jury trial in November, 1969, the government introduced testimony from the teller at the City National Bank which established that Pigg had been in that bank on or about January 20, 1969 when the $8500 check was passed. An FBI fingerprint expert testified that he had found three of Pigg's fingerprints on the deposit slip that was presented with the $8500 check, and another FBI expert testified that the handwriting on the deposit slip, the $8500 check, the $6800 check, the back of the $6300 check, and the signature card signed when the Dorfman account was opened was all made by the same person. Other witnesses· testified to the facts that the $8500 check had been sent from Illinois to Ohio where it was dishonored, that no Jack Dorfman had ever lived at the address listed on back records, and that Leonard Hoying had never authorized the making of a check to Jack Dorfman. The defendant did not take the stand. After less than one day of deliberation, the jury found Pigg guilty as charged.

The district court subsequently denied defendant's motions for a new trial and for acquittal on November 13, 1969, and defendant filed a timely notice of appeal on December 17, 1969. The court reporter who took notes of the testimony during the trial died on January 6, 1970, and defendant's trial counsel asked for an extension of time in which to transmit the record on appeal. Counsel ultimately withdrew his representation of the defendant, and, when neither this counsel nor the court of appeals was able to locate Pigg, his appeal was dismissed on October 19, 1970. On August 31, 1971, Pigg asked that his appeal be reinstated because he had not been able to pay the fee which his counsel asked for arguing an appeal, and his motion was granted. Defendant's new court-appointed counsel notified this court that the clerk's office of the district court was having difficulties in deciphering the notes of the deceased reporter, and on December 1, 1971, this court entered an order that a committee of experts be established to compile an adequate trial transcript in accordance with the procedure set out in United States v. Farley, 292 F.2d 789, 792 (2d Cir. 1961), cert. denied, 369 U.S. 857, 82 S.Ct. 937, 8 L. Ed.2d 15 (1962). After some delay, the transcript was supplied to defendant on May 15, 1972.

Defendant's primary contention on appeal is that the transcript that was furnished him is inadequate to permit an adequate appellate review of the proceedings leading to his conviction, and that accordingly his conviction should be reversed.[1] He argues that the transcript does not include many of the objections that trial counsel claimed he made in his motion for a new trial, including objections to the introduction of various crucial government exhibits, objections to the testimony of the bank teller who remembered seeing Pigg in the bank and of the federal agents who arrested him and examined ´certain handwriting samples, and an exception to the failure of the trial judge to declare a mistrial. Since it is therefore impossible to determine the grounds of these objections, the arguments of counsel in support of them, and the rulings of the court, defendant submits that the precedent of other cases which have reversed convictions because of the una-

---

1. Since the time of his sentence is nearly completed, defendant submits that retrial of his case would be futile and that this appeal is meant to clear his record.

vailability of a transcript should govern. *See,* United States v. Rosa, 434 F.2d 964 (5th Cir. 1970), United States v. Atilus, 425 F.2d 816 (5th Cir. 1970).

■ Defendant's objections to the completeness of the transcript are untimely and are made in the wrong forum. As the order of this court issued on December 1, 1971 provided, both parties were entitled to file any objections which they had to the contents of the transcript in the district court within a reasonable time after it was submitted to that court by the committee of experts. If any objections were filed, the district court was to conduct a hearing to settle the dispute over the transcript, and to transmit the results of the hearing to this court as a supplement to the record on appeal. The defendant's counsel failed to invoke this procedure to object to the completeness of the transcript provided, and defendant cannot avoid the consequences of his waiver by pressing his objections to the transcript in this court.

■ We doubt, however, whether defendant has been prejudiced by the failure of his counsel to file objections in the district court, for we find that the transcript prepared from the tape recordings of the proceedings and the notes of the deceased reporter is sufficiently complete to allow an adequate review of the defendant's trial. An affidavit of the present official court reporter for the Eastern District of Illinois who prepared the transcript states that his 120 hours of reviewing the tape recordings and notes produced a tran-

script which contains 95% of the testimony of the trial witnesses. The text of the transcript shows where the reporter could not decipher various questions and answers, and that most of the unintelligible portions of the transcript occur during the testimony of a bank official who was relating the procedures used in his bank. Since this testimony was merely peripheral to the government's case, and since defendant's post-trial motion assigned no error to the admission of this person's testimony, we cannot say that the omissions prejudiced the defendant. In addition, the record contains the government's response to the defendant's post-trial motions. We find that this response is an adequate record of the recollections of the U. S. Attorney as to the grounds asserted by defendant's counsel for his various objections during the trial.[2]

Defendant's second contention on appeal is that the district court erred in admitting the testimony of Mrs. Betty Russell, a teller at the City National Bank who took the $8500 check and a deposit slip from a man identifying himself as Jack Dorfman on January 20, 1970. At Pigg's preliminary hearing Mrs. Russell testified that she could not positively identify Pigg as the man who posed as Jack Dorfman, although she had earlier told FBI agents that she recalled seeing Pigg in the bank on or about January 20, 1969. At Pigg's trial Mrs. Russell once again testified that she saw Pigg in the bank, but that she could not positively identify Pigg as Jack Dorfman.[3]

2. The government's response indicates that defendant objected to the introduction of most government exhibits on the grounds that they were not tied to the defendant. We find that each one of these exhibits was linked to the defendant, and, taken together, all tended to establish his guilt. The government's response also indicates that an objection was made to the testimony of the FBI agent who arrested Pigg on the ground that Pigg's post-arrest statements were made while he was not represented by counsel. The record shows that Pigg was advised of his right to coun-

sel, but that he chose to talk anyway. An objection was also made to the testimony of the FBI handwriting expert on the basis of relevancy; we find that his testimony was adequately tied to the defendant. The objection to the identification testimony of the bank teller is discussed *infra.*

3. Defendant's counsel argued in her brief that the transcript of Mrs. Russell's testimony is incorrect because Mrs. Russell never identified Pigg as the man who posed as Jack Dorfman, and that a ques-

■ Defendant contends that the testimony of Mrs. Russell should have been excluded on two grounds. First, he suggests that the method by which Mrs. Russell identified him from photographs shown to her by the FBI was impermissibly suggestive and "[gave] rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). No facts are developed to support this argument. The record shows that Mrs. Russell identified Pigg as having been in the bank from a photograph shown her by the FBI, that several photographs were shown to her from which she picked Pigg's picture, and that she repeatedly testified under cross-examination that the reason that she could identify Mr. Pigg as a man who was in the bank was because of her memory of seeing him there. As the Supreme Court indicated in *Simmons*, defendant's counsel can use cross-examination of an identification witness to expose the shortcomings of photographic identification. *Id.* The cross-examination in Pigg's trial indicated no prejudicial impropriety in the photographic identification procedure. Absent such an indication, the district court did not err in refusing to strike Mrs. Russell's testimony on this ground.

Defendant also argues that Mrs. Russell's testimony should have been excluded because her corporeal identification of him, after she had identified his photograph, occurred under circumstances which violated the guidelines laid down in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The record indicates that after Mrs. Russell had identified Pigg as a person who was in the City National Bank on or about January 20, 1969, FBI agents took her and Marva Webb, another bank teller, to the removal hearing for Pigg in Dayton, Ohio. Before the hearing began, both Mrs. Russell and Mrs. Webb saw Pigg being escorted into the building by an armed U. S. Marshal. Mrs. Webb immediately recognized Pigg as the man who had posed as Jack Dorfman at the bank. Mrs. Russell, however, later testified as a defense witness at the removal hearing that she could not positively identify Pigg as the person who had given her the $8500 check. At trial, defendant's counsel argued that since the identification of Pigg had occurred under suggestive circumstances when Pigg was not represented by counsel, any use of the identification testimony of either Mrs. Russell or Mrs. Webb would violate Pigg's sixth amendment rights. The district court excluded the testimony of Mrs. Webb, but permitted Mrs. Russell to testify that she recalled seeing Pigg in the bank sometime around January 20, 1969.

■ We find that the district court correctly admitted the identification testimony of Mrs. Russell.[4] United States v. Wade, *supra*, does not apply a *per se* rule of excluding all identification testimony when it has arguably been influenced by a lineup at which defendant's counsel is not present. 338 U.S. at 240,

tion posed by Pigg's trial counsel which reads "And you can identify that man that came to your teller's window as Mr. James Pigg?" and which received an affirmative answer should actually read "And you *can't* identify that man . . . as Mr. James Pigg? " We agree with this argument. It would be unusual for the government not to ask Mrs. Russell whether she could identify Pigg as the man who gave her the $8500 check if it knew that she could make the identification. Yet the government asked for no such identification. In fact, other portions of the transcript support the interpretation of Mrs. Russell's testimony that

she recalled seeing Pigg in the bank, but that she could not positively identify him as the man who posed as Jack Dorfman. On cross-examination she testified:

Q So you are saying here today, I take it, at this time that you cannot identify Mr. Pigg as Mr. Dorfman that is on these exhibits that have been put into evidence?

\* \* \* \* \*

A That is correct.

4. We intimate no opinion as to the propriety of the exclusion of Mrs. Webb's testimony that Pigg was definitely the man who posed as Jack Dorfman.

87 S.Ct. 1926. Instead, the admissibility of such testimony depends upon whether the witness' identification of the defendant is based on a source independent of the witness' observation of him at the lineup, *Id.* at 241, 87 S.Ct. 1926, and whether the consideration of a variety of factors indicates that the identification is reliable.[5] In this case Mrs. Russell testified that she recalled seeing Pigg at the bank, that she picked Pigg's photograph from a group of photographs that were shown to her, and that she identified Pigg at the preliminary hearing as the same man whose picture she had picked out. Therefore, there is sufficient evidence that her identification of Pigg came from a source independent of the arguably suggestive observation of the defendant at the Dayton, Ohio hearing.

The instant case is also different from *Wade* in that Mrs. Russell apparently resisted any suggestions which may have been made to her by her observation of Pigg in the custody of an armed marshal. Despite the tendency of such circumstances to suggest to her that Pigg was the guilty party, Mrs. Russell adhered to her previous opinion that she had seen Pigg in the bank, but could not identify him as the man who had given her the forged $8500 check. *See,* Neil v. Biggers, 409 U.S. 188, 201, 93 S.Ct. 375, 383, 34 L.Ed.2d 401 (1972).

 Defendant's final argument is that the evidence presented at his trial was insufficient to support a finding of guilt beyond a reasonable doubt. There is evidence in the record upon which the jury could find that Pigg was seen in the City National Bank at the time the forged check was deposited, that the deposit slip submitted with the check carried his fingerprints, and that the same person who filled out the deposit slip had also endorsed the $8500, the $6800,

and the $6300 checks. We find that defendant's suggestions that his fingerprints could have gotten on the deposit slip in another manner would not necessarily create a reasonable doubt in the minds of reasonable men about his guilt. Deposit slips are ordinarily used for only one purpose, and are very rarely taken outside of a bank. Furthermore, after he was arrested, defendant denied that he had ever been in Illinois. We find that the evidence is sufficient to prove Pigg's guilt beyond a reasonable doubt.

The judgment of conviction imposed upon defendant James E. Pigg is affirmed.

Affirmed.

5. Such factors include the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, identification of the defendant's picture prior to the lineup, the failure to identify the defendant on a prior occasion, and the lapse of time between the criminal act and the lineup identification. United States v. Wade, 388 U.S. at 241, 87 S.Ct. 1926.