**UNITED STATES of America ex rel. Ronald BURBANK, Petitioner-Appellee,**

v.

**WARDEN, ILLINOIS STATE PENITENTIARY, Respondent-Appellant.**

No. 75–2079.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 22, 1976.

Decided May 5, 1976.

Rehearing and Rehearing En Banc Denied June 24, 1976.

William J. Scott, Atty. Gen., Thomas Connors, Asst. Atty. Gen., Chicago, Ill., for respondent-appellant.

Kenneth N. Flaxman, John Thomas Moran, Chicago, Ill., for petitioner-appellee.

Before FAIRCHILD, Chief Judge, and CUMMINGS and PELL, Circuit Judges.

CUMMINGS, Circuit Judge.

In this appeal from the district court's order directing the issuance of a writ of habeas corpus, the principal question before us is whether there was probable cause for Burbank's warrantless arrest. Petitioner was convicted of murder in the state court; the Supreme Court of Illinois affirmed. *People v. Burbank*, 53 Ill.2d 261, 291 N.E.2d 161 (1972), certiorari denied, 412 U.S. 951, 93 S.Ct. 3017, 37 L.Ed.2d 1004. Petitioner instituted this action pending appeal of his conviction and use of the state post-conviction relief procedures. The district court initially dismissed this action for failure to exhaust state remedies. On appeal, this Court reversed and remanded the case with directions to ascertain the status of the collateral attack in the state courts. When

no relief was forthcoming from the state courts, the district court held a hearing on petitioner's constitutional claims, concluding that the arresting police officers lacked probable cause for their action and therefore the subsequent confession was inadmissible. We disagree and reverse.

■ Initially, petitioner has moved to dismiss the appeal on the ground that the Warden's notice of appeal was untimely. The 30 days in which to appeal the decision of the district court in a civil case commences on the date a final judgment is entered. F.R.A.P. 4(a). A judgment is final when a separate document is issued and the district court judge need only perform ministerial acts to enforce it. Federal Rules of Civil Procedure 58; *Chicago Housing Tenants Organization, Inc. v. Chicago Housing Authority*, 512 F.2d 19, 21 (7th Cir. 1975); *First National Bank in Dodge City v. Johnson County National Bank & Trust Co.*, 331 F.2d 325, 327 (10th Cir. 1964).

■ On September 19, 1975, the district court entered a minute order that a writ of habeas corpus should issue if the petitioner was not afforded a new trial by the State of Illinois within 120 days. At the same time, the district court stayed the issuance of the writ until October 1, 1975. On October 1, 1975, petitioner's counsel presented a motion requesting the district court to approve a "proposed writ" attached to the motion. That motion was granted on October 1st, and the Clerk was directed to issue the writ, directing the Warden to release petitioner on January 29, 1976, which was 120 days after October 1, 1975. Because of the stay issued September 19th and the calculation of the 120 days, the minute order of that date was not a final judgment. See *United States v. Evans*, 365 F.2d 95, 97 (10th Cir. 1966); *Arena Co. v. Minneapolis Gas Co.*, 227 F.2d 665 (8th Cir. 1955). We have concluded the final order granting the writ of habeas corpus was issued October 1st and the respondent's October 30 notice of appeal therefore was timely. Petitioner's motion to dismiss the appeal is denied.

■ The test for the legality of a warrantless arrest is whether the officers then had probable cause to make it. As explained in *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145, this depends on whether at the time of arrest "the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." A quantum of evidence that establishes guilt beyond a reasonable doubt is not necessary to validate such an arrest (*Henry v. United States*, 361 U.S. 98, 103, 80 S.Ct. 168, 171–72, 4 L.Ed.2d 134, 139; *United States v. Clay*, 495 F.2d 700, 705 (7th Cir. 1974), certiorari denied, 419 U.S. 937, 95 S.Ct. 207, 42 L.Ed.2d 164), nor is it material that there may have been time to obtain a warrant. *United States ex rel. Falconer v. Pate*, 319 F.Supp. 206, 212 (N.D.Ill.1970), affirmed, 478 F.2d 1405 (7th Cir. 1973). Rather, each case must be examined on its own facts to determine whether it is reasonably probable that the individual arrested committed the criminal act. *United States v. Clay, supra*, 495 F.2d at 704; *Coleman v. United States*, 137 U.S.App.D.C. 48, 420 F.2d 616 621 (1969).

The record shows that Mihran Boghasian was fatally shot in his shoe repair shop at 7159 South Ashland Avenue in Chicago on the afternoon of July 30, 1968. Before the shopkeeper was murdered, two young men separately entered the shoe repair shop. The second entrant had been followed on the sidewalk because three teen-aged girls (Diana Lawrence, Eunice Jackson and Eartha Hudson) thought he was good-looking. They observed him for one or two minutes before he entered the shop, and they lingered outside because they wished to see him again.

Just after the fatal shooting, the three girls saw the man they had been following walk swiftly from the shop while inserting a handgun in his belt. Petitioner walked so close to the girls that he actually bumped into Diana Lawrence at 4:30 p. m. when the sun was still shining. Eunice Jackson described him as looking "a little worried."

After petitioner and the other man, Romell Wilson, petitioner's co-defendant in the ensuing state murder trial, fled, the police were called to the scene.

At 7:30 p. m. on July 30, police Detectives Joseph Barrett and Nick Crescenzo were assigned to investigate the homicide. They interviewed 15 people about the shooting and worked through the night before filing a 5-page report on their findings.

Their report shows that they interviewed Diana Lawrence and Eunice Jackson who told them that they had "observed offender enter store, heard shot fired, and observed offender emerge from store with gun in his hand." They described the assailant as

"One Male Negro, very light complected, approximately 18 to 20 years of age, wavy black hair with sides slicked down, 160 to 170 lbs, 5'7" to 5'8" tall, wearing yellow or gold knit shirt, and dark green slacks, carrying 380 [sic] Caliber Automatic, Blue Steel."

Four other witnesses told the detectives they had observed the offender "run north on Ashland from scene and put a gun inside of his belt." His route of flight was described in the report as follows.

"Offenders Fled North on Ashland Avenue From 7159 South, Then East Through Burger King Parking Lot, Continued East Through Alley Between 71st Place and 72nd Street to Laflin, Then North On Laflin To 71st Place, Then East On 71st Place To Bishop, And Last Seen North On Bishop At 71st."

During separate interviews by the two detectives at police headquarters, all agreed on the description of the offenders. Eunice Jackson and Diana Lawrence added that they thought they had seen petitioner a few times before in the same vicinity.

At 8:30 a. m. on July 31st, Detectives Daniel Fitzgerald and Raymond Luth were assigned to continue the investigation. Fitzgerald conferred with Barrett about the case and both Fitzgerald and Luth read all or part of Barrett's and Crescenzo's report.

Afterwards, Fitzgerald told Luth that he knew someone who matched the aforesaid description and who lived at an address in the area where the offenders had fled. Fitzgerald told Luth he was familiar with the neighborhood because he had lived there for some years. Fitzgerald stated that when he learned of the description given by Eunice Jackson and Diana Lawrence, he determined that the description matched petitioner whom he had seen 40 to 50 times during the course of his work as a policeman in that neighborhood. Fitzgerald knew of petitioner's name since 1965 and considered him a well-groomed, nice-looking person who was meticulous about his clothing. Fitzgerald also had known petitioner's mother.

After discussing the case, accompanied by Luth, Fitzgerald drove to the house where he knew petitioner resided at 1542 West 71st Street, arriving there about 10:15 a. m. Petitioner's mother greeted them at the door and said that he did not live at home any more. She invited them in to see for themselves, and shortly afterwards petitioner arrived. After identifying themselves to petitioner, who later admitted that he had known Fitzgerald, they questioned him as to his whereabouts on the afternoon of July 30th and as to the type of clothing he then wore. Thereupon he was arrested and given the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

On the basis of these facts, the district court found no probable cause. Its decision rested upon the judgment that the identification of the suspect was not particular enough to allow the police to focus on the petitioner. We disagree. The flaw in the lower court's analysis is the insufficient weight given to Fitzgerald's knowledge of the neighborhood and its inhabitants. Fitzgerald's decision to arrest the petitioner was not mere speculation or suspicion of criminal conduct (cf. *Sibron v. New York*, 392 U.S. 40, 62–63, 88 S.Ct. 1889, 1902–03, 20 L.Ed.2d 917, 934–35), nor was it based on subjective factors. See *United States v. McDowell*, 475 F.2d 1037, 1039–1040 (9th Cir. 1973). Instead, it followed from the

specific characteristic of the defendant with regard to his personal appearance. The officer's knowledge of petitioner's fastidious dress was acquired from his relationship with the neighborhood. Fitzgerald's reliance on his knowledge of the people on his beat was entirely proper. *Beck v. Ohio, supra,* 379 U.S. at 91, 85 S.Ct. at 225–26, 13 L.Ed.2d at 145; *United States v. Tramunti,* 513 F.2d 1087, 1101–1104 (2d Cir. 1975); *United States v. Birdsong,* 446 F.2d 325 (5th Cir. 1971). The district court seemingly excluded this type of information from the calculus of probable cause with the result that police officers' development of a detailed familiarity with the people and places on their beat would be overly discounted. When a policeman acts upon his personal knowledge, he must possess more than an inkling of criminal conduct or a vague suspicion of wrongdoing. *Sibron v. New York, supra.* However, he must be permitted to make reasonable inferences based on his insight and experience about the area and inhabitants of his assignment. *Ortiz v. Craven,* 442 F.2d 418, 419 (9th Cir. 1971); *United States v. Davis,* 147 U.S.App.D.C. 400, 458 F.2d 819, 822 (1972). The courts should encourage police officers to become involved in the communities in which they work and permit them to use the knowledge so acquired in detecting criminal activity. In our view, the third-party information conveyed to Detectives Fitzgerald and Luth, together with Fitzgerald's own knowledge, gave them probable cause to arrest him under the test of *Beck v. Ohio, supra.*[1]

Because the warrantless arrest was legal, we need not consider whether the connection between the arrest and petitioner's subsequent confession and his lineup identification was sufficiently attenuated as to cleanse those evidentiary items of taint. See *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416.

Petitioner also argues that in the event we find probable cause for the arrest, the district court's decision can be affirmed or that a new hearing can be ordered because of constitutional violations found insubstantial below. We need address only the claim that no court has made a "reliable and clear-cut determination of the voluntariness" of petitioner's confession. *Jackson v. Denno,* 378 U.S. 368, 391, 84 S.Ct. 1774, 1788, 12 L.Ed.2d 908, 924. The district court held otherwise, stating that at a hearing to suppress the confession, the state trial court adequately considered the issue. We agree.

At the suppression hearing, the trial judge stated that the parties presented conflicting facts on the question of voluntariness of the confession. The police testified that the defendant confessed after receiving his *Miranda* warnings and that he was not subjected to any threats or coercion. The petitioner claimed that he confessed only after the police threatened to let victim's son, a police officer, "come in and kill me." The police denied the allegation. In denying the motion to suppress, the judge noted the conflict and remarked that it could be presented to the jury. However, he continued and held that in view of the *prima facie* showing that the *Miranda* warnings had been given and understood and that there was no coercion, the confession was admissible.

When viewed in the context of Illinois criminal procedure, this decision satisfies the demands of *Jackson v. Denno.* In Illinois the trial judge is directed to determine the voluntariness of a confession. Ill. Rev.Stat., ch. 38, § 114–11; *People v. Johnson,* 44 Ill.2d 463, 469–470, 256 N.E.2d 343 (1970), certiorari denied, 400 U.S. 958, 91 S.Ct. 356, 27 L.Ed.2d 266. Once the court determines that the confession is admissible, the jury is not permitted to consider the question of voluntariness; however, it is entitled to view the circumstances surrounding the confession to determine the weight to be given it. Ill.Rev.Stat., ch. 38,

---

1. The fact that Fitzgerald told petitioner at the time that he was a suspect in a murder case does not denigrate from probable cause. *United-* *ed States v. Walker,* 246 F.2d 519, 528 (7th Cir. 1957).

§ 114–11(f). Thus the judge's initial remarks about the existence of a question for the jury are no more than a recognition that the jury would ultimately determine the probative value of the confession.

■■■ This observation, therefore, does not detract from the finding on the question of law before the court—the voluntariness of the confession. To hold that a confession is admissible, the judge need be convinced only by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 626–27, 30 L.Ed.2d 618, 627–28; *People v. Jackson*, 41 Ill.2d 102, 109, 242 N.E.2d 160 (1968). Although the choice of words was imprecise, the judge's finding of a *prima facie* lack of coercion or compulsion was a sufficient indication that he had resolved the factual question against the petitioner.[2]

■■■ For the reasons given in Judge Lynch's May 30, 1975, memorandum of decision appended hereto, we do not agree with the alternate grounds submitted by petitioner in favor of affirmance.

Motion to dismiss appeal denied. Judgment reversed with direction to deny the petition for a writ of habeas corpus.[3]

FAIRCHILD, Chief Judge (dissenting).

I am unable to agree that the knowledge of Officer Fitzgerald at the time of arrest gave him probable cause to believe that Burbank had committed the crime. The description provided by the eyewitnesses, which lacked significant identifying characteristics, coupled with Fitzgerald's prior knowledge of the defendant's appearance, behavior and address does not constitute information sufficient for probable cause to believe that defendant committed the crime. Our system of justice may well need to develop a procedure which safeguards the rights of a suspect, but allows the police, with less than probable cause, to compel a suspect to be viewed by witnesses. In this case, however, no one has suggested that the detention of Burbank was less than full arrest.

If the arrest was unlawful, as I believe it was, the confession given subsequent to this arrest could still be admissible if the prosecution can demonstrate that it "was sufficiently an act of free will to purge the primary taint of the unlawful invasion." *Wong Sun v. United States*, 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441, 454 (1963). The determination of whether the confession was made voluntarily, despite the illegal arrest, will depend on a consideration of several relevant factors besides absence of coercion: whether *Miranda* warnings were properly administered; the temporal proximity of the arrest and the confession; the presence of intervening circumstances; and the nature and purpose of the official misconduct. *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416, 427–28 (1975).

The initial determination of the voluntariness of a confession, and subsequently its admissibility, must be made separately from and before it is admitted at trial. *Jackson v. Denno*, 378 U.S. 368, 391, 84 S.Ct. 1774, 788–89, 12 L.Ed.2d 908, 923–24 (1964). I must conclude from a careful examination of the transcript of the suppression hearing that no clear finding of voluntariness was made by the state trial court. The relevant excerpt hereinafter quoted demonstrates that the trial court ruled that the confession was admissible based on a *prima facie* though admittedly disputed showing that *Miranda* warnings were given and that no coercion was used. This finding by the court falls short of the constitutionally

2. Were the judge to believe petitioner's testimony at the hearing, he would have concluded that the confession was involuntary and therefore excluded it. The use of the "*prima facie*" language does not negate this conclusion. See *People v. West*, 25 Ill.App.3d 827, 322 N.E.2d 587 (5th Dist. 1975); *People v. McDonald*, 15 Ill.App.3d 620, 623–624, 305 N.E.2d 69 (1st Dist. 1973).

3. Our January 22, 1976, stay of execution of the writ of habeas corpus will remain in effect until the petition for a writ of habeas corpus is denied by the district court pursuant to our mandate.

mandated procedure which is required "to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend." *Jackson, supra,* at 391, 84 S.Ct. at 1788, 12 L.Ed.2d at 924. The substance of the ruling made at the suppression hearing is contained in the following paragraphs:

It is surely a question that can be put before the jury, for the consideration of the jury at the time of the trial, when and if any statements are to be introduced, but the issue before the Court on the preliminary motion is an issue of law, and an issue as to whether the Court must exclude the statements from evidence, and, as I have stated before, it is a disputed question of fact, there is a prima facie showing of the Miranda warnings given and that there was no force or coercion used against the defendants, therefore, it seems to me that I have no alternative but to decide this question of law by admitting whatever statements there are, by granting their admissibility into evidence.

So, I will overrule the motion to suppress the confession.

The trial court was apparently conforming to the requirements as to admissibility of an allegedly coerced confession followed in many states before the decision in *Jackson.*

I reach this conclusion fully aware that the Supreme Court of Illinois, looking at the same record, was satisfied that: "The trial court heard this evidence and found that the statement was voluntarily given and not coerced. We do not find this determination to be against the manifest weight of the evidence." *People v. Burbank,* 53 Ill.2d 261, 266, 291 N.E.2d 161, 165 (1972). We are, however, required to make an independent inquiry concerning a challenged state court procedure. *Townsend v. Sain,* 372 U.S. 293, 318, 83 S.Ct. 745, 759–60, 9 L.Ed.2d 770, 788–89 (1963). My reading of the ruling on the voluntariness of the confession compels me to conclude that the trial court did not resolve the disputed facts, and did not find the confession voluntary in fact.

Based on this analysis, I believe that the judgment ordering release should be affirmed, or at a minimum, the cause remanded for a hearing to determine the voluntariness of the confession.

## APPENDIX

UNITED STATES OF AMERICA ex rel. RONALD BURBANK,

Petitioner,

vs.

WARDEN, ILLINOIS STATE PENITENTIARY,

Respondent.

No. 73 C 2527

### MEMORANDUM OF DECISION

On October 17, 1974, the Court of Appeals reversed the Order of this Court dismissing the instant petition for writ of habeas corpus for failure to exhaust state remedies. This case now comes before the Court on remand from the Court of Appeals to hold a hearing on the claims raised in the petition. *United States of America, ex rel. Ronald Burbank v. Warden, Illinois State Penitentiary,* 506 F.2d 1402 (7th Cir. 1974). Accordingly, pursuant to 28 U.S.C. Section 2243, this Court must now "summarily hear

and determine the facts, and dispose of the matter as law and justice require."

Originally, petitioner raised six claims in his habeas corpus petition. Two of the claims, which had previously been litigated in the Illinois Supreme Court adversely to the petitioner, have now been abandoned. (Petitioner's Memorandum of Law at page 3). The remaining four claims are now before the Court and will be considered separately. The first three of these claims have been decided adversely to petitioner

on appeal in the Illinois Supreme Court; the fourth claim has never been raised in state court proceedings.

## I.

### USE OF A COERCED CONFESSION

Petitioner alleges that the oral admissions used against him at trial were not the product of a "rational intellect and free will." In support of this allegation, petitioner contends that prior to making any admissions he was advised that the son of the person killed was a police officer who was present in the station and that petitioner would be turned over to that officer if he did not confess.

At the hearing on the motion to suppress, detectives Fitzgerald and Luth testified that they gave petitioner Miranda warnings. (R. 13, 17, 19, 21–23). They also denied ever having made those threats to the petitioner.

Based on the testimony of these detectives the trial court denied the motion to suppress, stating:

> The issue before the court is really two, first issue is were the Miranda warnings given, and second, is there a prima facie showing that whatever statements that were made by the two accused is there a prima facie showing that the statements were voluntary and trustworthy. [T]here is a prima facie showing of the Miranda warnings given and that there was no force or coercion used against the defendants . . . (R. 37–38).

Although there is some confusing language in the state court record, this court finds that the state court did in fact rule on the voluntariness of the admissions when it overruled the motion to suppress.

As the Illinois Supreme Court noted when confronted with this same issue on direct appeal:

> The preliminary inquiry as to whether the defendant has been properly warned and whether he knowingly waived his rights is for the trial court. In making

its determination the court need not be convinced beyond a reasonable doubt and its findings will not be disturbed unless it can be said that they are against the manifest weight of the evidence. [Citations omitted].

\* \* \* \* \* \*

At the hearing on the motion, defendant stated that the officers told him the murdered man was the father of a policeman and unless he told them what they wanted they would turn him over to the deceased's son. The officer stated that they may have told the defendant that the deceased was the father of a policeman but denied the alleged threats and denied telling defendant that the son was in the police station. The trial court heard this evidence and found that the statement was voluntarily given and not coerced. We do not find this determination to be against the manifest weight of the evidence. *People v. Johnson,* 44 Ill.2d 463, 256 N.E.2d 343.

Under the facts and circumstances of this case the Court finds that the petitioner was given a full and adequate hearing upon the voluntariness of his confession at the pretrial hearing on the motion to suppress. The Court agrees with the finding of the Illinois Supreme Court that the trial court properly found that the statement was voluntarily given and not coerced.

## II.

### UNCONSTITUTIONAL RESTRICTIONS ON CROSS–EXAMINATION

Petitioner contends that he was denied his Sixth Amendment rights when his cross-examination of a police officer at trial was improperly restricted. Specifically upon cross-examination of one of the interrogating police officers petitioner's counsel sought to inquire into the circumstances surrounding the making of the oral admissions. Such inquiry was disallowed by the trial judge.

Under the facts and circumstances of this case, the Court finds that the prosecutor's

objection to defense counsel's cross-examination of the police officer was properly sustained.

At the hearing on the motion to suppress the officer denied threatening the defendant in this manner. Accordingly, with the defendant choosing not to take the stand, the purpose of such leading questions—without any further proof of such threats and where the defendant knows of the officer's earlier denial—is to create an unjustified inference in the minds of the jury that such threats were made. Such cross-examination has been held improper for prosecutors and defendants alike because the mere asking of the leading question concerning threats and the denial carry a harmful innuendo which is unsupported by any evidence. See *People v. Burbank,* 291 N.E.2d 161, at 166. Similarly the restriction on cross-examination did not amount to a constitutional deprivation like that found in *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. See *People v. Burbank,* 291 N.E.2d 161, at 166; and *McGautha v. California,* 402 U.S. 183, at 213, 91 S.Ct. 1454, at 1470, 28 L.Ed.2d 711, at 729–30. Thus, the Court finds that the action of the trial court in sustaining the prosecutor's objection to defense counsel's line of interrogation does not amount to reversible error.

### III.

### RIGHT TO COUNSEL AT LINEUP

Petitioner contends that he had a right to counsel at the post arrest lineup, and that denial of that right rendered the resulting testimony about the lineup identification inadmissible at trial. Further, petitioner contends that the police purposely delayed the filing of charges against the defendant until after the lineup so as to vitiate his right to counsel at said lineup. This Court does not agree.

As the Illinois Supreme Court noted:

In the case before us the defendant had been arrested as a murder suspect sometime after 10:00 A.M. and following interrogation had been placed in a lineup between 2:00 and 2:30 P.M. the same day.

He had not been formally charged with murder at that time. Under the decision in *Kirby* [*Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411], his right to counsel as announced in *Wade* [*U. S. v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149] *and Gilbert* [*Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178] had not attached prior to the lineup. *People v. Burbank,* 291 N.E.2d 161, at 167–68.

Petitioner contends that the exclusionary rule of *Wade and Gilbert* should have been applied to the identification testimony in this case. The Court finds no evidence of an attempt by the police to vitiate defendant's right to counsel at the lineup by deliberately delaying commencement of adversary proceedings. Under the facts of this case, a delay of four or four and one-half hours between arrest and lineup is not an unnecessary delay.

Further, the Court notes that the exclusionary rule of *Wade-Gilbert* is not a *per se rule.* The admissibility of the identification testimony depends upon whether the witness' identification of the petitioner is based on a source independent of the witness' observation of him at the identification procedure. *United States v. Pigg,* 471 F.2d 843 (7th Cir. 1973).

In reviewing the record the Court notes that the girls who identified the defendant not only had the opportunity to observe the defendant at the time of the crime but also their attention was called to the defendant by virtue of their interest in good looking boys. The girls stated that their attention had been called to the defendant before he entered the store where the crime took place because they thought he was good looking. They waited in front of the store for defendant to come out and when he did they recognized him again as the man who entered. They described him as wearing a gold shirt and dark trousers and as having curly hair.

Under such circumstances there was strong evidence that the identification was based upon this incident. Since the identi-

fication testimony of the witnesses was also based upon an identification independent of the lineup, defendant's attempts to exclude such testimony were properly overruled. See *United States v. Pigg, supra.* Under the totality of the circumstances, the Court finds that the failure of the trial court to exclude identification testimony does not amount to reversible error.

### IV.

### UNLAWFUL ARREST CLAIM

Petitioner alleges that his arrest was not based upon probable cause but he was merely arrested as a suspect in a murder case. Therefore, petitioner contends that his arrest was unlawful and that all fruits of such an arrest are inadmissible at trial. *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

The Court finds that the state court record is insufficient upon which to make a finding on this claim since the state court did not deal with this issue. Accordingly, the Court finds that an evidentiary hearing is necessary on the claim of unlawful arrest.

### CONCLUSION

Upon review of the state court record and all the briefs on file in this cause, the Court finds that as to the claims of use of a coerced confession, improper restriction of cross-examination, and deprivation of right of counsel at the lineup, the instant petition for writ of habeas corpus must be denied. However, as to petitioner's claim of an unlawful arrest, which was not raised in the state court proceedings, the Court finds there to be insufficient evidence in the state court record upon which to make a ruling at this time. Accordingly, ruling upon the claim of unlawful arrest will be deferred until an evidentiary hearing can be held on that claim.

/s/ William Lynch
Judge, United States District Court

Dated: May 30, 1975.