Emmanuel Ray ROBERTS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

Oct. 10, 1978.

Jack Emory Farley, Public Defender, Linda K. West, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Carl T. Miller, Jr., Asst. Atty. Gen., Frankfort, for appellee.

JONES, Justice.

Emmanual Ray "Rusty" Roberts appeals from judgments of conviction imposing a prison term of 10 years on a charge of first-degree robbery and a sentence of 20 years for first-degree rape in conformity with a jury's verdict. KRS 515.020(1)(a) and KRS 510.040(1)(a). The jury also found Roberts guilty of two counts of assault and fixed his punishment at a prison term of 6 months on each charge. The trial court directed that the sentences on first-degree robbery and first-degree rape be served consecutively. He directed that the sentences on the two convictions for assault be served concurrently with the sentences im-

posed on the charges of first-degree robbery and first-degree rape. Not satisfied with the result, Roberts prosecutes this appeal.

The principal question presented is whether the trial court erred in overruling Roberts' motion to suppress statements that he made to the police and the photo identification evidence.

It is necessary to briefly summarize the facts relevant to a determination of the questions presented. On January 13, 1977, at approximately 5 P.M., a young man armed with a pearl-handled pistol entered Jim's Salon Shoes in Newport, Kentucky. He told Jim Holschuh and two saleswomen in substance that "This is an armed robbery." At gunpoint he marched Julie Staggs and Peggy Mertle, saleswomen, to the rear of the store where Holschuh was seated and demanded the contents of the cash register. After spraying Holschuh with mace the intruder took the contents of the cash register, Holschuh's Rolex watch, ring and wallet. He then raped Peggy Mertle, struck Julie Staggs in the face three times, and left. As soon as he had gone the Newport police were notified. Shortly thereafter they arrived at the scene. Holschuh and his employees described the assailant as a "male, white, 17 years, slender build, dark green skull cap, with light blonde hair sticking straight down." The next day the three victims aided police in compiling a composite drawing of the gunman. On January 15, 1977, the police went to the home of Roberts, who was 16 years old, took him into custody, and drove him to the police station for "investigation purposes." Detective Earl Roesel, who assisted in taking Roberts into custody, testified that Roberts was sought for questioning by reason of "information received from a reliable source."

The juvenile court judge issued an order permitting police to photograph Roberts. He based that order on a charge made two months earlier of Roberts' violation of probation. After Roberts was photographed, his picture was included in a photographic display containing eleven photographs. This display was shown to the three victims.

All of them identified Roberts' photograph as that of the assailant. Roberts was then formally charged with the offenses upon which he was eventually convicted. Two days after the robbery, rape and assault the police officers returned to Roberts' home for further investigation. The authorities talked to Roberts' roommate, Warren Miller. While they were engaged in conversation with Miller they saw a Rolex watch matching the description of the watch taken from Jim Holschuh. Because it was in plain view, and based upon the information as to the description of the watch, the officers seized it and arrested Miller. They charged him with receiving stolen property. Subsequently, when the watch was shown to Holschuh he identified it as the one taken from him. A short time later, the officers told Roberts of these events, whereupon Roberts told the officers that he had put the watch in his bedroom. He stated that Miller knew nothing about the robbery. He admitted to the charges against him and told the officers the escape route that he took in going to his home. He stated that he dropped the diamond ring and threw the wallet in a ditch. Roberts also told the officers that the gun he used in the holdup was buried in the snow on his roof. Subsequently, the officers obtained a search warrant. During their search they found a pearl-handled pistol later identified as one stolen from Peter Garrett 10 days earlier. The officers found the gun on the roof under the snow as Roberts told them it would be. Roberts later claimed to have bought the gun from Wallace Glen Hoskins, who was arrested in connection with another armed robbery some 5 hours before the police officers confronted Roberts.

Roberts contends that his arrest was illegal because there was initially no probable cause to believe he had committed an offense. He argues that the evidence he sought to suppress was "fruit of a poisonous tree," *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, because it was obtained following the unlawful arrest, and that its admission violated his constitutional right to be free from illegal seizure. Prior to the trial and upon Roberts' motion

to suppress any statements he had given to any police officers and certain evidence taken from his home at 1011 York Street, Newport, Kentucky, the trial court conducted a comprehensive hearing on the matter. He made extensive findings of fact and conclusions of law. He made 22 specific findings relating to Roberts' contentions that such evidence was inadmissible. He concluded as a matter of law that none of the constitutional or other legal rights of Roberts were violated; that the statements or admissions made to the police officers by Roberts were voluntary and without force or coercion. He found also that the evidence admitted into the record at that hearing was properly and legally obtained by the police officers and that Roberts had failed to present sufficient probative evidence to sustain his motions.

■ This court finds Roberts' reliance on *Wong Sun* and its progeny misplaced. Detective Roesel testified that a "reliable source" led police officers to Roberts' home on York Street. The close proximity of the time between the arrest of Wallace Hoskins, from whom Roberts obtained his gun, and Roberts' arrest, supports the inference that Hoskins provided the information which led the police authorities to Roberts' home. Furthermore, Roberts' description given to the police by the three victims was sufficient to support probable cause. *United States ex rel. Burbank v. Warden, Ill. St. Pen.*, C.A. 7th, 535 F.2d 361 (1976), cert. denied, 429 U.S. 1045, 97 S.Ct. 750, 50 L.Ed.2d 758, rehearing denied, 430 U.S. 911, 97 S.Ct. 1187, 51 L.Ed.2d 589 (1977). From time immemorial the law in this jurisdiction provides that if an officer has reasonable grounds to believe that a felony has been committed he can make an arrest without a warrant. The totality of the evidence supports the trial court's finding that Roberts' arrest was based on probable cause to believe he had committed the offenses with which he was charged. This was so before the victims identified his photograph. Because Roberts was legally arrested, it was not error for the trial court to admit the evidence resulting from his arrest.

■ Roberts next contends that the trial court erred in excluding certain evidence offered by him to corroborate his claim that his admissions to the police authorities were coerced. Roberts testified that he fabricated the incriminating statements in response to a threatening remark reportedly made by Officer Gugel that "You'll go downstairs and then you'll cooperate." To bolster his interpretation of Gugel's alleged remark, Roberts' sister Linda Polley, proposed to testify that she had seen Gugel grab her brother's arm as they left juvenile court in April, 1977, almost causing him to fall. Roberts insists that the exclusion by the trial court of this proffered testimony amounts to a denial of his constitutional right to present evidence relevant to his defense. There is absolutely no merit in that argument. Officer Gugel questioned Roberts on January 15, 1977, over three months before the incident Ms. Polley describes. Therefore, her testimony, had it been admitted, had no tendency to prove that Roberts reasonably construed Gugel's statement as a threat. Accordingly, its exclusion by the trial court as irrelevant was proper.

■ This court has reviewed the record, the briefs, heard oral arguments, and is of the opinion that Roberts had a fair and impartial trial. This court is not willing to substitute its judgment for that of a jury who heard all of the evidence, the instructions of the court and arguments by counsel, and observed the demeanor of the witnesses.

It is the opinion of the court that the judgment should be and it is affirmed.

All concur.